UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

————————————————————————

LUIS DANIEL EURIZA ALVAREZ,

                           Petitioner,

      v.                                      9:26-CV-0058
                                      (AJB)

MICHAEL PHILIPS, Acting Field Office Director of
Immigration and Customs Enforcement, Enforcement and
Removal Operations, Buffalo Field Office; KRISTI NOEM,
Secretary of the United States Department of Homeland
Security; PAMELA BONDI, United States Attorney General,

                           Respondents.

————————————————————————

APPEARANCES:                             OF COUNSEL:

YACUB LAW OFFICES               IVAN YACUB, ESQ.
Counsel for Petitioner
12761 Darby Brooke Court
Suite 102
Woodbridge, Virginia 22192

UNITED STATES ATTORNEY
David M. Katz, Esq.
Assistant United States Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261

ANTHONY J. BRINDISI
United States District Judge

## DECISION and ORDER

## I.     INTRODUCTION

Petitioner Luis Daniel Euriza Alvarez seeks federal habeas corpus relief, by and

through counsel, pursuant to 28 U.S.C. § 2241.  Dkt. No. 1, Petition ("Pet."); Dkt. No. 1-1,

1

Supporting Exhibits.[1]  Respondents oppose the Petition.  Dkt. No. 8, Response; Dkt. No. 9, Supplemental Persuasive Authority.  Petitioner filed a reply.  Dkt. No. 10.

Petitioner, a Cuban citizen, has been living in the United States since February 19, 2022.  Pet. at 1 (¶1), 3 (¶11), 8 (¶ 38); Dkt. No. 1-1 at 3, 5.  After entering the United States, through a port of entry in Texas, federal officers from Immigration and Customs Enforcement ("ICE") processed and released the petitioner.  Pet. at 8 (¶ 38); Dkt. No. 1-1 at 4.  Agents served Petitioner "with a Notice to Appear with no scheduled court date or time given."  Dkt. No. 1-1 at 4, 5.

After his release, petitioner established a stable residence with his family in Florida and was employed as a truck driver for a moving company which transports vehicles.  Pet. at 8-9 (¶ 39); Dkt. No. 1-1 at 2-4 (indicating Petitioner had been employed from November of 2022 until his detainment in November of 2025).  Petitioner "has no arrests, charges, or convictions in the United States."  Pet. at 9 (¶ 41); *accord* Dkt. No. 1-1 at 5.

In March of 2022, petitioner submitted a RAPS (Refugees, Asylum and Parol System) application, which, in June of 2023, he later requested to adjust into Lawful Permanent Resident Status.  Dkt. No. 1-1 at 4.  As of the date of petitioner's detention, both requests were still pending, with no court or hearing dates scheduled.  *Id.*

In November of 2025, Petitioner was apprehended by federal authorities while he was working – specifically participating in a vehicle pick up at Fort Drum – and was later taken to Broome County Correctional Facility where he has since remained in custody.  Pet. at 1 (¶ 2) (indicating that Petitioner was apprehended by ICE on November 24, 2025), 9 (¶ 42) (indicating that Petitioner was detained by ICE on November 21, 2025); Dkt. No. 1-1 at 4

---

[1]  For the sake of clarity, citations to Petitioner's filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

(stating that a Border Patrol Agent arrested Petitioner after encountering him at Fort Drum on November 4, 2025).  Removal proceedings were also commenced.  Dkt. No. 1-1 at 6; *see also* Dkt. No. 1-1 at 9-12 (Notice to Appear before an Immigration Judge on January 5, 2026).

On December 18, 2025, petitioner filed an application for asylum with the immigration court in Napanoch, New York.  Pet. at 9 (¶ 43).  It is unclear what the status of that application is.

Petitioner has twice requested bond hearings and, both times, his requests have been denied "citing lack of jurisdiction."  Pet. at 9 (¶ 44).  While neither party provided the Court with these written decisions, the undersigned reasonably assumes that the immigration judge relied on the prevailing rationale, from *The Matter of Yajure Hurtado* decision, which holds that "aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings."  29 I. & N. Dec. 216, 220 (BIA 2025).   In other words, immigration judges are concluding that the continued detention of any noncitizen is mandatory, pursuant to § 1225(b)(2)(A); therefore, they do not have jurisdiction to grant a bond hearing.

## II.    PETITION

Petitioner argues that he is entitled to federal habeas relief because his requests for release from custody have been wrongly denied.  Pet. at 9 (¶ 44).  These actions, and his continued detention, violate (1) 8 U.S.C. § 1226(a); (2) the Administrative Procedure Act ("APA"); (3) the Due Process Clause; and (4) the recent Central District of California decisions in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873 (C.D. Cal).  Pet. at 9-11 (¶¶

3

45-56); *see also* Pet. at 2-3 (¶¶ 4-7), Pet. at 4-8 (¶¶ 15-37) (explaining how recent federal policy violates the federal statutory scheme).

Petitioner requests that this Court (1) declare the refusal to provide petitioner with a bond hearing unlawful; (2) decide that petitioner is entitled to a bond hearing as a *Maldonado Bautista* class member; (3) provide the bond hearing within a week or immediately release petitioner from immigration custody; (4) set aside the respondent's unlawful detention policy; and (5) provide any other relief that the Court deems just and appropriate.  Pet. at 11-12.

Respondent opposes the Petition, arguing that (1) Petitioner is lawfully detained under 8 U.S.C. § 1225(b)(2)(A) and is not entitled to a bond hearing; (2) the *Maldonado Bautista* declaratory judgment does not entitle Petitioner to the relief he seeks; (3) Petitioner's APA claim fails; and (4) Petitioner's Due Process Rights do not require a bond hearing.  Dkt. No. 8.[2]

III.    **DISCUSSION**

A.      **Legal Standard**

An individual seeking habeas relief must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  "A non-citizen, immigration-detainee petitioner seeking to challenge his detention pending removal may bring a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241."  *Dzhabrailov v. Decker*, No. 7:20-CV-3118, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (citing cases).  The petitioner "bears the burden of proving that he is being held contrary to law; and . . . the petitioner must satisfy his burden of proof by a preponderance of the evidence."  *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (citations omitted).

---

[2] Given the conclusions in this Decision and Order, the Court will not further address the parties' arguments related to the *Maldonado Bautista* decision.

4

**B.      Statutory Authority for Petitioner's Re-Detainment**

Respondents argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A).  Conversely, Petitioner argues the controlling authority should be 8 U.S.C. § 1226(a).  This is not the first time this Court has considered this argument.  *See Martins v. Akshar*, No. 9:26-CV-0095 (MAD), Dkt. No. 16, Memorandum-Decision and Order ("February Order").

While Respondents in the *Martins* case only mentioned this conflict tangentially,[3] Judge D'Agostino engaged in a detailed discussion considering whether § 1225(b)(2) or § 1226(a) properly authorized the detention of noncitizens who have lived in the United States for an extended period of time.  *Martins,* February Order, at 6-8.  The ultimate conclusion was that a "Petitioner [who] ha[d] lived in the United States for several years . . .  [wa]s not presently 'seeking admission' within the meaning of the statute, [therefore] § 1225(b)(2) d[id] not govern his re-detainment."  *Martins,* February Order, at 7-8.

Here, it is undisputed that Petitioner lived in the United States for over three years and eight months before his present detention.  Pet. at 1 (¶1), 3 (¶11), 8 (¶ 38); Dkt. No. 1-1 at 3, 5.  Respondents emphatically argue that Petitioner has "effectively concede[d] he is subject to removal proceedings and mandatory detention because he has never been admitted to the United States[; therefore,] 8 U.S.C. § 1225(b)(2)(A) mandates detention [without any statutory expiration date or geographic limitation on that mandate] during the pendency of [Petitioner's] removal proceedings[.]"  Dkt. No. 8 at 16-17.[4]

---

[3]  In that case, Respondents claimed that 8 U.S.C. § 1225(b)(1)(B)(ii) provided the authority to detain Petitioner and briefly noted that Petitioner's argument was "based on the mistaken belief that the Government [wa]s detaining him under 8 U.S.C. § 1225(b)(2) following the recent decision in *Matter of Yajure Hurtado* and a change in ICE policy."  *Martins,* Dkt. No. 13 at 8.
[4]   The undersigned also acknowledges the supplemental, persuasive authority that the Respondents provided to the Court.  Dkt. No. 9.  However, as noted by Respondents, that authority is not binding on this Court.  *Id.* at 1.

5

However, for the same reasons outlined in *Martins*, the Court disagrees and again adheres to its conclusion that 28 U.S.C. § 1226(a), not § 1225(b)(2)(A), governs Petitioner's detention. *Martins,* February Order, at 6-8.[5]

## C.    Due Process

Having concluded that Petitioner's detention is discretionary, and not mandatory, the next question is whether the detention violates Due Process. Petitioner argues that it does, thus his case warrants immediate release or, in the alternative, a bond hearing. Pet. at 10-11; Dkt. No. 10 at 14-18. Respondent claims the opposite, concluding that Due Process does not require a bond hearing. Dkt. No. 8 at 28-31.

"The Fifth Amendment entitles all persons to due process of law . . . [including] noncitizens, whether their presence here is lawful, unlawful, temporary or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing U.S. Const. amend. V & *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

> In the Second Circuit, the *Mathews v. Eldridge*, 424 U.S. 319 . . . (1976), balancing test applies when determining the adequacy of process in the context of civil immigration confinement. . . . The

---

The fact remains that "[t]he vast majority of courts throughout this District, Circuit, and even the country have rejected the Respondents' expansive interpretation of Section 1225(b)(2)." *Luis Francisco Mira Castro v. Noem*, No. 2:26-CV-0696, 2026 WL 369713 at *3 (E.D.N.Y. Feb. 10, 2026). "The Second Circuit has not addressed whether Section 1225(b)(2) requires the detention of any non-citizen encountered by ICE in the interior of the United States, although several cases raising this issue are on appeal. The Seventh Circuit recently suggested that Section 1225(b)(2) does not apply to noncitizens who are already residing in the United States . . . [while t]he Fifth Circuit recently reached the opposite conclusion." *Id.* (citing *Castanon-Nava v. United States Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) & *Buenrostro-Mendez v. Bondi*, __ F. Supp. 3d ___, No.25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026)).

Consequently, "[i]n the absence of Second Circuit precedent to the contrary," the undersigned continues to abide by the careful assessment of the law and well-reasoned decision in *Martins*, and concludes "that Respondent's position that Section 1225(b)(2) requires the detention of a noncitizen apprehended in the interior of the United States notwithstanding the fact that the non-citizen has continuously resided in this country for months, if not years, is unsupported by the statutory text." *Luis Francisco Mira Castro,* 2026 WL 369713 at *3.

[5]   The undersigned notes that the other Northern District Judges who have been asked to evaluate the Department of Homeland Security's blanket policy to detain everyone who has ever crossed the border, regardless of any of the case's other details, have also reached the same conclusion. *See Gaspar v. Akshar*, No. 9:26-CV-118 (BKS), Dkt. Entry Dated 02/05/26 (Oral Ruling and Docket Order & Dkt. No. 10, Order; *Perez v. Akshar*, No. 9-26-CV-0120 (ECC), Dkt. Entry Dated 02/06/26 (Oral Ruling and Docket Order) & Dkt. No. 16, Order.

> determination of what procedures are required under the Fifth Amendment requires consideration of: (1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail.

*Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 492 (S.D.N.Y. 2025) (internal quotation marks and citations omitted).

Applying the *Mathews* test here, Petitioner's Due Process rights were violated. "First, Petitioner has a cognizable private interest in being freed from unlawful detention." *Crespo Tacuri v. Genalo*, No. 1:25-CV-6896, 2026 WL 35569, at *7 (E.D.N.Y. Jan. 6, 2026) (citing *inter alia Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by one's own government.").

Second, there is a severe risk of erroneous deprivation given the fact that Petitioner was subjected to the wrong statutory authority and incorrect procedures which created and continued his detention.

> Two statutory sections govern immigration detention: 8 U.S.C. § 1225 . . . and 8 U.S.C. § 1226 . . . . Under Section 1225, detention of a noncitizen is mandatory and release is permitted only "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Section 1226, however, provides that detention is discretionary and, if detained, a noncitizen may then request a bond hearing before an immigration judge, 8 C.F.R. §§ 1236.1(c)(8), (d)(1), where the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 . . . (2019).

*O.F.B. v. Maldonado*, No. 1:25-CV-6336, 2025 WL 3277677, at *3 (E.D.N.Y. Nov. 25, 2025) (internal citations omitted). Here, to the extent it started with any, the rationale supporting the decision to detain Petitioner lost all its persuasive power since it utilized the wrong rubric.

7

> Specifically, since the Immigration Judge found [P]etitioner was being detained under 1225(b)(2)(A), he did not conduct an individualized assessment because under 1225, detention is mandatory. The risk of erroneously depriving [P]etitioner of his liberty is further emphasized by the fact that [R]espondents have not argued that [P]etitioner is a flight risk or a danger to his community[.]

*Crespo Tacuri,* 2026 WL 35569, at *7.  In fact, it is undisputed that Petitioner has lived in the United States for almost four years with no interactions with law enforcement.  Moreover, Petitioner provided additional evidence of his consistent work history, stable residence, and strong family ties, further mitigating any potential arguments that he is a risk of flight or danger to his community.

Finally, "the government's interest in continued detention is slight insofar as [P]etitioner was detained without an individualized custody determination that evaluated the dangerousness and flight risk or any articulated change in circumstances."  *Crespo Tacuri,* 2026 WL 35569, at *7.

In sum, "[a]s other courts have concluded in factually similar cases, Petitioner's detention without a bond hearing amounts to a due process violation."  *Crespo Tacuri,* 2026 WL 35569, at *7 (citing cases).

### D.    Remedy

The appropriate remedy here is immediate release.  That is because

> a bond determination by a DHS officer or an immigration judge would not remedy the core constitutional violation at issue here. [Petitioner]'s detention was unlawful from its inception because ICE detained h[im] under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a).  In this situation a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity to relief because the detention without adequate pre-deprivation procedures has already been

carried out.

*Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065, 2025 WL 3314420, at *31 (E.D.N.Y. Nov. 28, 2025) (citing *inter alia Lopez Benitez*, 795 F. Supp. 3d at 497 (concluding that "Respondents' failure to conduct any kind of individualized assessment *before* detaining him [resulted in a constitutional violation whereupon] any post-deprivation review by an immigration judgment would be inadequate.")).[6]

## IV.    CONCLUSION

For these reasons, it is

**ORDERED** that the Petition for a writ of habeas corpus, Dkt. No. 1, is **GRANTED**; and it is further

**ORDERED** that Respondents shall immediately release Petitioner Luis Daniel Euriza Alvarez from custody; and it is further

**ORDERED** that Respondents shall certify compliance with this Order by **filing a status report by 5 p.m., on Tuesday, February 24, 2026**; and it is further

**ORDERED** that pending the issuance of any final removal order against Petitioner Luis Daniel Euriza Alvarez, Respondents are also enjoined from denying him bond in any subsequent proceeding on the basis that he must be detained pursuant to 8 U.S.C. § 1225(b)(2)(A), absent a change in relevant circumstances; and it is further

**ORDERED** that after considering the particular circumstances of this case and *Mathews v. Eldridge*, 424 U.S. 319 (1976), Petitioner Luis Daniel Euriza Alvarez shall not be re-detained without adequate notice to Petitioner and his counsel, and without an opportunity to be heard at a hearing.

---

[6]  Having determined that Petitioner's Due Process rights were violated, and that he is entitled to a writ of habeas corpus on that basis alone, there is no need to address any remaining arguments related to the Administrative Procedure Act.

9

**IT IS SO ORDERED.**

Dated: February 17, 2026

Utica, New York

Anthony J. Brindisi
U.S. District Judge